UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 24-cv-24955-JB/Torres

UNITED KING FILM
DISTRIBUTION (1990) LTD, *et al.*,

      Plaintiffs,

v.

MOONPAY USA LLC,

      Defendant.

_____/

ORDER GRANTING DEFENDANT'S MOTION
MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendant MoonPay USA LLC's

("Defendant" or "MoonPay") Motion for Summary Judgment and Statement of

Material Facts (the "Motion").  ECF Nos. [82], [83], [84].  Plaintiffs United King Film

Distribution (1990) LTD and Stream IL Communications Ltd. ("Plaintiffs") filed a

Response in Opposition and Statement of Material Facts in Opposition.  ECF Nos.

[88], [89].  Defendant filed a Reply, and a Reply Statement of Material Facts.  ECF

No. [93], [91].  On March 26, 2026, the Court held oral argument on the Motion.  ECF

No. [121].  Following the hearing and pursuant to the Court's Paperless Order dated

March 30, 2026, both parties filed a Supplemental Memorandum of Law to address a

United States Supreme Court decision issued after the briefing on the Motion was

complete, ECF Nos. [126], [127].  Upon due consideration of the parties' submissions,

argument of counsel, the pertinent portions of the record, and the relevant

1

authorities, it is hereby **ORDERED AND ADJUDED** that Defendant's Motion is **GRANTED**.

### I.    BACKGROUND

Plaintiffs are Israeli corporations who produce and distribute copyrighted movie and television content to paying subscribers via cable, satellite broadcasting, or through its own platforms.  ECF No. [40] ¶¶ 6–7.  Defendant is a financial technology company whose platform allows users to convert traditional currency (or "fiat") into cryptocurrency.  ECF No. [84] ¶ 18.

The parties' dispute arises from the actions of a third-party infringer, Israel TV, who "own[s] and operate[s] a streaming service . . . [and has been] illegally broadcasting and streaming pirated copies of Plaintiffs' original content, broadcasting channels and TV services."  ECF No. [40] ¶ 8.  Plaintiffs allege that Israel TV offers these broadcasts at a significantly lower price than offered by Plaintiffs, diverting customers away from Plaintiffs' own streaming services.  *Id.*  As a result, Plaintiff United King Film Distribution Ltd., along with five other parties (the "New York Plaintiffs"), filed suit against Israel TV in the United States District Court for the Southern District of New York.  *Id.* ¶ 12; *see United King Distribution Ltd., et al., v. Does 1–10*, No. 1:21-cv-11024-KPF-RWL (S.D.N.Y) (the "New York Action").

The New York Plaintiffs obtained a $7,650,000 default judgment against the owners and operators of Israel TV (the "New York Default Judgment").  *See* ECF No. [40] ¶14; ECF No. [83] at 16; ECF No. [38-6] at 5.  The New York Default Judgment

also permanently enjoined the continued infringement of Plaintiffs' copyrights, including "any persons acting in concert or participation with them or third parties providing services used in connection with [the defendants'] operations, having actual knowledge of this Default Judgment and Permanent Injunction Order" (the "Injunction").  *See* New York Action, ECF No. [97].[1]

Plaintiffs served the Injunction on MoonPay and requested that MoonPay cease providing payment processing services to Israel TV.  *See* New York Action, ECF No. [130-3].  Although MoonPay explained that it has no association with Israel TV, ECF No. [84] ¶¶ 1–16, the New York Plaintiffs filed a motion for contempt in the New York Action.  ECF No. [83] at 16.  The Southern District of New York denied the motion for contempt, finding that Israel TV does not have a MoonPay account and that MoonPay "has no knowledge whatsoever of which wallets belong to [Israel TV]." *Id.*; *see also* New York Action, ECF No. [42], at 16:3-9–29:23-30.

### A.   The Instant Action

The present dispute centers on the mechanics of Israel TV's payment process. According to Plaintiff, Israel TV allows its users to pay for its infringing service through various means, including by directing subscribers to Defendant's payment platform.  *See* ECF No. [88-1] ¶ 75.  Defendant's platform permits users to exchange fiat currency for crypto currency.  ECF No. [84] ¶ 18.  The platform is non-custodial,

---

[1] The Court takes judicial notice of the filings in the New York Action, including the New York Default Judgment.  *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (a district court may take judicial notice of certain facts, including public records).

meaning it does not hold or control users' wallets, digital assets, or place orders for payments from user wallets to third parties. *Id.* ¶20.

Utilizing MoonPay's platform is straightforward. To utilize the platform, a user must provide personal identifying information to satisfy certain Know Your Customer ("KYC") and Anti-Money Laundering ("AML") requirements.[2] The user must also pass Defendant's background check and vetting process. *Id.* ¶ 23. Only users who have completed Defendant's KYC and AML processes can use Defendant's platform. *Id.* ¶ 24.

Users also agree to Defendant's Terms of Use ("TOU") which serve as the governing rules of each user's use of their own account. *Id.* ¶ 27. The TOU includes, among other things, prohibitions against engaging in unlawful activity, including copyright infringement. *Id.* ¶ 27. The TOU states in pertinent part:

> 6. PROHIBITED USE. *This outlines some of the things you cannot use the Services for.*
>   1. You may not use your MoonPay Account or any of the Services to engage in the following categories of activity ("Prohibited Use"):
>                                    . . .
> F. Intellectual Property Infringement: Engage in transactions involving items that infringe or violate any copyright, trademark, right of publicity . . .

ECF No. [84-15] at 18–19. The TOU also requires users to certify that they own and control the crypto wallet address[3] used in connection with their account. ECF No. [84]

---

[2] Defendant's KYC and AML policies are not available to the general public. *Id.* ¶ 62.

[3] A crypto wallet address is a random string of letters and numbers used to send and receive digital currencies. This random string does *not* contain identifying information about the wallet owner. ECF No. [84] ¶ 29.

¶ 28.  According to Defendant, aside from third party AML and sanctions compliance checks, it has no post-transaction monitoring and cannot determine whether cryptocurrency deposited into a user's wallet is being withdrawn to pay for a subscription to Israel TV or any other goods or services.  *Id.* ¶ 38.  Defendant's assertion is consistent with the Court's finding in the New York Action that Defendant "has no knowledge whatsoever of which wallets belong to [Israel TV]." *See* New York Action, ECF No. [42], at 16:3-9–29:23-30.

Defendant also provides services to select businesses referred to as "Partners." ECF No. [84] ¶ 39.  Partners undergo a more thorough "Know Your Business" ("KYB") due diligence review, and are offered an application programing interface ("API") which allows them to track their own end-user customers' use of Defendant's platform to purchase crypto in order to purchase their goods.  *Id.* ¶ 41.  The API includes a public API "key" that can be embedded into a Partner's website to direct traffic to Defendant's platform and track the customer transactions associated with the key. *Id.* ¶ 42.  This API key can also appear as a "widget" displaying Defendant's logo, akin to a Paypal or Apple Pay logo. *See id.* ¶ 43.  These keys are publicly visible and can be copied by anyone.  *Id.* ¶45.  Defendant's representative testified that the public nature of API keys complicates Defendant's ability to differentiate traffic originating from a copied-and-pasted API key versus a vetted partner's API key.  *See* ECF No. [84] ¶ 46; *see also* Skoberne 30(b)(6) Vol. 1, 74:23-75:23, ECF No. [84-18].

According to Plaintiffs, Israel TV subscribers create an account and select a subscription plan and are then directed to a website with the domain name "Billnet"

to pay for the subscription.  ECF No. [88-1] ¶¶ 76–77.  A user then has two options: it can complete the purchase by credit card, or it can process its payment through MoonPay. *Id.* ¶¶ 78–79.

In its attempts to stop Israel TV's infringement of its content, Plaintiffs and their counsel asked Defendant to cease providing services to Israel TV.  *See id.* ¶ 86. In June 2022, when Plaintiffs contacted Defendant about a misappropriated MoonPay widget, Defendant immediately disabled the API key associated with that widget and required signature authentication from the authorized partner to whom it belonged.  *Id.* ¶ 50.  Defendant also notified Plaintiffs that it does not provide software or personnel to Israel TV, does not receive any payments from Israel TV, and has never had any communications with Israel TV.  ECF No. [84] ¶¶ 3, 8, 10.[4] Defendant also initiated a whitelisting feature, which prevented non-partners from integrating their widget into unauthorized websites.  *Id.* ¶ 50.  Additionally, Defendant blocked web domains associated with Israel TV or its alleged intermediary, Billnet.[5]  *Id.*

In October 2024, Plaintiffs made an additional request, that Defendant disable another API key belonging to a verified Partner that Plaintiffs claimed was being used by Israel TV.  *Id.* ¶ 53.  According to Defendant, doing so caused disruptions for

---

[4] Plaintiffs do not dispute these facts.  ECF No. [88-1] ¶¶ 2, 8, 10.

[5] According to Defendant, although blocking is the best way to stop a particular domain from routing users to Defendant's platform, ECF No. [83] at 17, it does not stop a third party from "scrubbing" or removing the information from their URL.  ECF No. [84] ¶¶ 50–51.  As such, blocking cannot stop the domain from routing users to the MoonPay platform. *Id.*

both it and its Partner but had little impact on Israel TV, *id.* ¶ 54, as it is undisputed that Israel TV found another API key to use less than forty-eight hours later, *id.* ¶ 55. Defendant contends that disabling these API keys each time Plaintiffs advised that Israel TV had misappropriated a Partner's API key would significantly disrupt its platform and make little difference to Israel TV's ability to find another API key since they are publicly available, and it does not preclude Israel TV from simply directing traffic to their website via URL. *Id.* ¶¶ 57–58.

On November 14, 2024, Defendant sent a letter stating that it would no longer disable API keys and/or blacklist URLs. ECF No. [89–17].

The following day, Plaintiffs filed this action.[6] The Amended Complaint raises four claims: (i) Count I for Contributory Copyright Infringement, (ii) Count II for violation of the Florida Deceptive and Unfair Trade Practices Act, (iii) Count III for "Interference with Economic Expectation,"[7] and (iv) Count IV for Negligence. ECF No. [40] at 18–24. Plaintiffs seek damages under the theory that Defendant is contributing to Israel TV's infringement by refusing to take additional measures to prohibit users from using the MoonPay platform to convert currency that is ultimately used to subscribe to Israel TV. *Id.* Plaintiffs also argue that its various policies are deceptive to the public and affect Florida consumers and businesses. ECF No. [88] at 27.

---

[6] This matter was originally filed in the Middle District of Florida and was transferred to the Southern District of Florida on December 18, 2024.

[7] Count III was dismissed with prejudice on March 20, 2025, pursuant to the Court's Order on Defendant's Motion to Dismiss. *See* ECF No. [117].

7

## II.  THE INSTANT MOTION

Defendant filed its Motion arguing that it is entitled to judgment as a matter of law as to each cause of action in the Amended Complaint. *See generally* ECF No. [83]. Defendant argues that it is entitled to summary judgment on Plaintiffs' contributory infringement claim because (i) the record contains no evidence of direct infringement, (ii) Defendant does not materially contribute to any infringement by Israel TV, (iii) Defendant's platform is capable of substantial non-infringing use, and (iv) Defendant does not induce or encourage any infringement by Israel TV.[8]  *Id.* at 19–27. Defendant also argues that it is entitled to summary judgment on Plaintiffs' FDUTPA claim because (i) the claim is preempted by the Copyright Act, (ii) there is no evidence that Defendant's TOU is deceptive, (iii) the record evidence cannot support the "causation" element of Plaintiffs' FDUTPA claim because Defendant's AML, KYC, and KYB policies are not publicly available, and (iv) Plaintiffs cannot establish damages. *Id.* at 27–30. Further, Defendant argues that it is entitled to summary judgment on Plaintiffs' negligence claim because (i) it is preempted by the Copyright Act, and (ii) Plaintiffs cannot establish the existence of a duty because there is no duty to prevent the conduct of third persons or to prevent a third party's economic loss. *Id.* at 31–32. Finally, Defendant argues that it is entitled to summary

---

[8] Defendant also argues that that Plaintiffs do not plead a claim for vicarious infringement. ECF No. [83] at 25–26. Plaintiffs do not address this argument in their Response, nor do they direct the Court to any evidence that establishes that Defendant can be liable under a theory of vicarious infringement. *See generally*, ECF No. [88]. Accordingly, Plaintiffs have implicitly conceded that Count I cannot be based on vicarious infringement and, therefore, the Court does not consider this argument in its analysis below.

judgment on the issue of damages and injunctive relief because (i) there is no admissible evidence that Plaintiffs suffered lost profits as a result of Defendant's alleged conduct, and (ii) Plaintiffs fail to establish copyright liability as a matter of law. *Id*. at 32–38.

In their Response to Defendant's Motion, Plaintiffs argue that Defendant has not properly established the lack of a genuine issue of material fact for each of Plaintiffs' claims. *See generally* ECF No. [88]. Plaintiffs argue that Defendant is a payment processor and can be held liable for contributory infringement for facilitating payments to Israel TV, and that Plaintiffs have sufficient evidence to show that Defendant materially contributes to Israel TV's infringement. *Id*. at 18–19. Plaintiffs also argue that Defendant's ability to take "simple measures" to prevent facilitating payments to Israel TV further demonstrates that it contributes to infringement, and that its platform is not capable of non-infringing use. *Id*. at 21–26. With respect to their FDUTPA claim, Plaintiffs argue that (i) the claim is not preempted, (ii) the TOU improperly misleads users to believing that Defendant monitors copyright infringement, and (iii) Plaintiffs have sufficiently established their damages through expert reports. *Id*. at 27–28. Plaintiffs also argue that their negligence claim is not preempted and that Defendant's AML and KYC policies, as well as the TOU, support Plaintiffs' negligence claim. *Id*. at 28–29. Lastly, Plaintiffs argue that they have sufficiently established damages. *Id*. at 30–35.

In Defendant's Supplemental Memorandum of Law, it further argues that it is entitled to summary judgment on Plaintiffs' contributory infringement claim based

on the Supreme Court's decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. __, 146 S. Ct. 959 (2026).  ECF No. [127].  Specifically, Defendant asserts that Plaintiffs cannot establish the requisite intent to support a contributory infringement claim because (i) Defendant does not induce Israel TV's alleged infringement, and (ii) Defendant's service is not tailored to infringement.  *Id.* at 3–5.  In Plaintiffs' Supplemental Memorandum of Law, they argue that Defendant's conduct satisfies both the "inducing infringement" and "tailored to infringement" forms of intent, as set forth in *Cox*, to support their contributory infringement claim.  ECF No. [126] at 3–4.

## III.   LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact is one with "a real basis in the record" such that "a reasonable jury could return a verdict for the non-movant."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The movant has the initial burden of showing the absence of a genuine issue of material fact.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  To determine whether the movant has met this burden, courts view the movant's

evidence and all factual inferences arising therefrom in the light most favorable to the non-movant. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999)). As to issues on which the non-moving party would bear the burden of proof at trial, it is sufficient for the movant to highlight a failure of proof concerning an essential element of the non-movant's case. *Celotex*, 477 U.S. at 322–23.

Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); see also Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"A court need not permit a case to go to a jury[ ] when the inferences that are drawn from the evidence, and upon which the non-movant relied, are "implausible." *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 592–94). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-

movant's claim rests." *Id.*

### IV.    ANALYSIS

#### A.    <u>Defendant is Entitled to Summary Judgment on Count I.</u>

Defendant argues that it is entitled to judgment as a matter of law because Plaintiffs cannot establish a claim of contributory infringement.  ECF No. [83] at 10–17.  Defendant asserts that the record contains no evidence of direct infringement, and that Defendant does not materially contribute to any infringement by Israel TV. *Id.* at 10–14. Defendant further asserts that the MoonPay platform is capable of substantial non-infringing use.  *Id.* at 14–16.  In addition, Defendant asserts that it does not "induce or encourage" any infringement by Israel TV and that its services are not "tailored to infringement".  *Id.* at 15–16.

"A claim for contributory copyright infringement has two elements: "(i) direct infringement and (ii) intentional inducement or encouragement." *Microsoft Corp. v. Guirguis*, No. 20-cv-24514, 2022 WL 1664181, at * 3 (S.D. Fla. March 30, 2022) (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990) (explaining that "[c]ontributory infringement necessarily must follow a finding of direct or primary infringement").

As for the first element, to prove direct infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010).  Defendant argues that Plaintiffs have not shown direct infringement because they have not provided sufficient evidence that they own a valid copyright.  ECF No. [83] at 19.  The only evidence Plaintiffs offer to prove that they own the relevant

12

copyrights are two declarations: one which contains only a conclusory assertion that Plaintiffs "own[] a valid U.S. copyright for original works, subject to copyright protection as provided in the U.S. Copyright Act of 1976," and another which merely identifies the name of four copyrighted works available on Israel TV without stating that Plaintiffs *own* the copyright to those works. ECF No. [89-7] ¶7; ECF No. [89-8] ¶13. In its Reply, Defendant offers evidence that the U.S. Copyright Office Public Records System does not reflect that any of the four works identified in Plaintiffs' supporting declaration are registered, copyrighted works belonging to Plaintiffs. ECF No. [91-6].

As to the first prong, Plaintiffs' evidence is quite thin. And although it is well-settled that a mere scintilla of evidence is not enough to survive summary judgment., *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."),the evidence must be viewed in the light most favorable to Plaintiffs as the non-movants. As such, the Court finds that as to this first issue there is a disputed issue of fact as to whether Plaintiffs own a valid copyright for the works available on Israel TV.

However, summary judgment is nevertheless appropriate because, as explained below, there is an absence of evidence from which a reasonable juror could find that Defendant had the intent required for contributory liability and, thus, the second element is not satisfied. During the pendency of the Motion, the Supreme Court clarified in *Cox Communications, Inc. v. Sony Music Entertainment*, the

standard for the second element of a contributory infringement claim.  146 S. Ct. at 967.  The Court explained that "[t]he provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement."  *Id.*  "The intent required for contributory liability can be shown only if the party induced the infringement or the provided service is tailored to that infringement."  *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 440–41 (1984)).

Plaintiffs assert that Defendant's conduct satisfies both the "inducing infringement" and "tailored to infringement" forms of intent set forth in *Cox*.  ECF No. [126] at 2.  Defendant, however, asserts that there is no evidence to support that it induced Israel TV's alleged infringement and that its service is not tailored to infringement.  ECF No. [127] at 3–5.  As explained below, the Court agrees with Defendant.

### 1. There is Insufficient Evidence from Which a Reasonable Juror Could Find that Defendant "Induced Infringement."

For purposes of a contributory infringement claim, "[a] provider induces infringement if it actively encourages infringement through specific acts[,]" such as promoting, marketing, or advertising its service as a tool to infringe copyrights.  *Cox*, 146 S. Ct. at 967 (citing *Grokster*, 545 U.S. at 942 (holding that a jury could find two file-sharing companies liable for inducement where the companies promoted and marketed their software as a tool to infringe copyrights and the "principal object" of their business models "was use of their software to download copyrighted works"); *see*

14

*also Kalem Co. v. Harper Brothers*, 222 U.S. 55, 62–63 (1911) (finding liability where "[t]he defendant not only expected but invoked by advertisement the use of its films" for infringement of an author's copyright); *Henry v. A. B. Dick Co.*, 224 U.S. 1, 49 (1912) (finding liability because the sale was made "with the purpose and intent" that the objected be used for patent infringement), *overruled on other grounds*, *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502, 518 (1917)).

As in *Cox*, "[Defendant] did not 'induce' or 'encourage' its [users] to infringe in any manner." *Cox*, 146 S. Ct. at 968. Like the plaintiff in *Cox*, "[Plaintiffs] provided no 'evidence of express promotion, marketing, and intent to promote' infringement." *Id.* (quoting *Grokster*, 545 U.S. at 930). To the contrary, the undisputed evidence reflects that Defendant has *no* affirmative contact with Israel TV or its subscribers to be able to induce or encourage the infringement. *See* ECF No. [84] ¶¶ 3, 8, 10, 12, 14; ECF No. [88-1] ¶¶ 3, 8, 10, 12, 14. For example, it is undisputed that Defendant (i) does not provide software or personnel to Israel TV; (ii) does not host, store, display control or distribute Israel TV's content (or Plaintiffs'); (iii) does not have any independent, non-public knowledge of Israel TV's content; (iv) does not receive any payments from or on behalf of Israel TV; and (v) has never communicated with Israel TV. *See* ECF No. [84] ¶¶ 3, 8, 10, 12, 14; ECF No. [88-1] ¶¶ 3, 8, 10, 12, 14. In addition, Defendant discouraged copyright infringement through various means, such including a prohibition against copyright infringement in its TOU and "blacklisting" web domains identified by Plaintiffs as belonging to Israel TV or its alleged intermediary. ECF No. [84] ¶¶ 27, 50–51; ECF No. [88-1] ¶¶ 27, 50–51.

15

Plaintiffs argue that Defendant's "conduct demonstrates affirmative encouragement" because Defendant disabled an API key, "watched the infringement stop, and then allowed the pipeline to flow again" by refusing to continue disabling API keys. ECF No. [126] at 3.[9]  However, this argument is foreclosed by the Supreme Court's "repeated admonition that contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Cox*, 146 S. Ct. at 969 (citing *Kalem Co.*, 222 U.S. at 62 (explaining that "mere indifferent supposition or knowledge on the part of the seller" that the buyer will use the product unlawfully is "not enough" to make the seller liable for the buyer's conduct); *Sony*, 464 U.S. at 439 (explaining that "[t]here is no precedent in the law of copyright" for liability based only "on the fact that [the defendant has] sold equipment with constructive knowledge of the fact that [its] customers may use that equipment to make unauthorized copies of copyrighted material"); *Grokster*, 545 U.S. at 939, n.12 (confirming that "a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement")).

In short, there is insufficient record evidence for a reasonable juror to find that Defendant induced infringement.  Thus, absent any evidence that Defendant's service is tailored to infringement, Plaintiffs' claim of contributory copyright infringement cannot stand.

---

[9] It is undisputed that Israel TV found another API key to use less than forty-eight hours after Defendant disabled the API key.  ECF No. [84] ¶ 55.

### 2. The Record Evidence Establishes that Defendant's Services are Not "Tailored to Infringement."

"A service is tailored to infringement if it is 'not capable of "substantial" or "commercially significant" noninfringing uses.'" *Cox*, 146 S. Ct. at 967 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring); *see also Sony*, 464 U.S. at 442 (concluding that a tape recorder "is capable of substantial noninfringing uses"—like personal use—so "sale of such equipment to the general public does not constitute contributory infringement" despite the fact that customers may use the tape recorder to make unauthorized copies of copyrighted material). Simply put, to be tailored to infringement, the service must be "'good for nothing else' but infringement." *Grokster*, 545 U.S. at 932.

Here, as in *Cox*, Defendant's service is "clearly capable of substantial or commercially significant noninfringing uses." *Cox*, 146 S. Ct. at 967 (quotation marks omitted). Indeed, Plaintiffs do not dispute that "MoonPay's [cryptocurrency exchange] platform and services … are capable of being used for non-infringing purposes." ECF No. [84] ¶ 66; ECF No. [88-1] ¶ 66 (disputing only that "MoonPay's platform is designed to be used for infringing purposes" and failing to dispute that the platform is capable of being used or non-infringing purposes); *see also* ECF No. [88-1] ¶ 19 (Plaintiffs stating that, "MoonPay offers users the ability to exchange (1) traditional currencies for cryptocurrency; (2) cryptocurrency for traditional currencies; and (3) one cryptocurrency for another cryptocurrency").

Notwithstanding, Plaintiffs contend that "MoonPay's widget, as deployed through Israel TV's payment flow is 'especially adapted' for infringement" because

17

"[t]he widget operates as a turnkey payment mechanism configured with prefilled subscription amounts and wallet addresses to consummate transactions for pirated content." ECF No. [126] at 4. This argument ignores the standard set forth in *Cox,* which asks only whether the service is capable of noninfringing use. *See* 146 S. Ct. at 967. Plaintiffs further contend that "[Defendant] has submitted no evidence that is platform is used for substantial noninfringing purposes[,]" such as "user testimony, marketing materials, or evidence of what users do with purchased cryptocurrency." ECF No. [126] at 4. Again, this argument misapprehends *Cox*. The inquiry turns on capability, not actual use, so the absence of evidence about how users in fact utilized the platform does not bear on the tailoring analysis. *Cox*, 146 S. Ct. at 967.

Because the undisputed record establishes that Defendant's services are capable of "substantial" or "commercially significant" noninfringing uses, the Court finds that Defendant's services are not tailored to infringement. Indeed, the record is devoid of evidence supporting either an inducement or tailoring theory of intent, as required under *Cox* to sustain a claim for contributory copyright infringement.[10]

Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiffs' contributory infringement claim, and its Motion is **GRANTED** as to Count I.

### B.  Defendant is Entitled to Summary Judgment on Count II.

Defendant argues that Plaintiffs' FDUTPA claim also fails as a matter of law. ECF No. [83] at 27. Defendant offers four reasons in support of its argument: (i)

---

[10] Given this conclusion, the Court does not reach Defendant's argument regarding material contribution.

18

Plaintiffs' FDUTPA claim is preempted by the Copyright Act, (ii) there is no evidence that Defendant's TOU is deceptive, (iii) the record evidence cannot support the "causation" element of Plaintiffs' FDUTPA claim because Defendant's AML, KYC, and KYB policies are not publicly available, and (iv) Plaintiffs cannot establish damages.   As explained below, the Court concludes that while Plaintiffs' FDUTA claim is not preempted, there is insufficient evidence to support the first two elements of a FDUTPA claim, namely a deceptive or unfair practice and causation.[11]

**1.  The Copyright Act Does Not Preempt Plaintiffs' FDUTPA Claim.**

Defendant argues that Plaintiffs' FDUTPA claim is preempted by federal copyright law.  The Copyright Act "preempts all state causes of action based on a right found in the Act or an equivalent to such a right." *Foley v. Luster,* 249 F.3d 1281, 1285 (11th Cir. 2001) (citing 17 U.S.C. § 301(a)).  As the Eleventh Circuit explained, "Section 301 in effect establishes a two-pronged test to be applied in preemption cases," namely, (i) "whether the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103 [of the Act]" and (ii) "whether the rights at issue are 'equivalent to' the exclusive rights of section 106 [of the Act]." *Crow v. Wainwright,* 720 F.2d 1224, 1225–26 (11th Cir. 1983).  With respect to the second prong, the Eleventh Circuit employs the "extra element" test, which asks whether "an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display," such that the extra element

---

[11] Given this conclusion, the Court does not reach Defendant's arguments regarding damages.

"changes the nature of the action so that it is *qualitatively* different" from a copyright infringement or, in this case, a contributory infringement claim. *Foley*, 249 F.3d at 1285–86; *see also Crow*, 720 F.2d at 1226–27. If an extra element exists, then the state law claim is not preempted. *Id.* In short, the Act "preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law." *Foley*, 249 F.3d at 1285 (quoting *Comp. Assoc. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2d Cir. 1992)).

Here, neither prong of Section 301 preemption is satisfied. As to the first prong, Plaintiffs' FDUTPA claim is not based on Defendant's alleged contribution to Israel TV's copyright infringement. ECF No. [40] at 19–23. Rather, it is based on Defendant's allegedly deceptive representations in their TOU, AML, and KYC policies. *Id.* As such, the "rights at issue" in Plaintiffs' FDUTPA claim do not "fall within the subject matter of copyright" because the FDUTPA claim does not allege that Defendant's conduct violates Plaintiffs' rights in their copyrighted works.

Even if the first prong was met, the second prong is not. To state a claim for direct copyright infringement under the Copyright Act, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). A claim for contributory copyright infringement likewise has two elements: "(i) direct infringement and (ii) intentional inducement or encouragement." *Microsoft Corp. v. Guirguis*, No. 20-cv-24514, 2022 WL 1664181, at * 3 (S.D. Fla. March 30, 2022). By contrast, "[t]he elements of a FDUTPA claim are: '(1) a deceptive

20

act or unfair trade practice; (2) causation; and (3) actual damages.'" *Gov. Emp. Ins. Co. v. Right Spinal Clinic*, No. 23-11778, 2024 WL 4564168, at * 9 (11th Cir. Oct. 24, 2024) (quoting *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013)).

It is evident that Plaintiffs' FDUTPA claim requires proof of an additional element, namely that Defendant's TOU and AML, KYC, and KYB policies contain deceptive representations. Indeed, each of the elements of a FDUTPA claim (i.e., deceptive act, causation and damages) require Plaintiffs to provide evidence distinct from a copyright claim. As such, Plaintiffs' FDUTPA claim is qualitatively distinct and, therefore, has "extra elements" for purposes of Section 301 preemption. *See Foley*, 249 F.3d at 1286; *TushBaby, Inc. v. Shiaon*, No. 24-cv-21136, 2024 WL 5054925, at *2 (S.D. Fla. Dec. 9, 2024) (determining that FDUTPA claim was not preempted because "the deception allegation is an 'extra element' of the FDUTPA claim not necessary to prove the copyright infringement claim"). For these reasons, the Court concludes that Plaintiffs' FDUTPA claim is not preempted. *See Crow,* 720 F.2d at 1225–26*; see also Ediciones Musicales Y Representaciones Internacionales, S.A. v. San Martin*, 582 F. Supp. 2d 1358, 1361 (S.D. Fla. 2008) ("Unlike a claim for copyright infringement, this particular claim requires the 'extra element' of a deceptive act or unfair practice.").

**2. There is Insufficient Evidence from Which a Reasonable Juror Could Find that the First and Second Elements of a FDUTPA Claim Are Satisfied.**

Defendant also argues that Plaintiffs have not provided evidence to support that it has any "unfair" or "deceptive" practices, or that such practices caused harm

21

to consumers.  ECF No. [83] at 28.  On this point, the Court agrees.  "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)); *see also Angelo v. Parker*, 275 So. 3d 752, 755 (Fla. 1st DCA 2019) (stating that a deceptive practice is a practice that is likely to mislead consumers acting reasonably in the circumstances, to the consumers' detriment).  Whether an act is deceptive or unfair may be decided as a matter of law. *See, e.g., Zlotnick*, 480 F.3d at 1287; *Jones v. TT of Longwood, Inc.*, No. 6:06-cv-651, 2007 WL 2298020 *7 (M.D. Fla. August 7, 2007).

Plaintiffs argue that Defendant's "policies and [TOU] are deceptive" because they "falsely misrepresent[ ] that [Defendant] prohibits 'transactions involving items that infringe or violate any copyright . . .'" which "misleads customers into believing that [Defendant] actively ensures that illegal activities do not occur through their platform." ECF No. [88] at 28.  This misreads Defendant's TOU.  The TOU are terms that govern a *user's* conduct, not Defendant's own conduct.  They are instructions for each user's use of the platform, as agreed to by each MoonPay user and Defendant. *See* ECF No. [84-15] at 2 ("This Agreement applies to an individual's use of the following MoonPay products and services.").   The TOU clearly instructs each MoonPay *user* to "not use [their] MoonPay Account or any of the Services to engage in . . . transactions involving items that infringe or violate any copyright . . . ." *Id.* Even viewing the evidence in the light most favorable to Plaintiffs, no reasonable

22

juror could understand these terms to mean that Defendant is monitoring copyright infringement in any way.  Tellingly, Plaintiffs have not provided any evidence that a MoonPay user had such a belief, or was otherwise misled by Defendant's TOU.  *See generally* ECF No. [88-1].  Absent evidence that Defendant's TOU is deceptive, Plaintiffs' FDUTPA claim fails as matter of law.  *See e.g.,  Blobner v. R.T.G. Furniture Corp.,* No. 8:17-cv-1676, 2020 WL 13597866, at * 2 (M.D. Fla. Jan. 8, 2020) ("[Plaintiffs'] FDUTPA claims fail as a matter of law because there is no evidence of a deceptive act or unfair trade practice."); *Carriuolo v. Gen. Motors Co.,* 823 F.3d 977, 983–84 (11th Cir. 2016) (applying Florida law) (recognizing that for purposes of a FDUTPA claim, the alleged practice must be *likely* to deceive).

As for Defendant's KYC, KYB and AML policies, it is undisputed that these policies are not available to the public.  *See* ECF No. [84] ¶62; ECF No. [88-1] ¶ 62. "To establish a violation of the FDUTPA, the plaintiff must show that 'the practice was likely to deceive a consumer acting reasonably in the same circumstances.'" *Pfeil v. Sprint Nextel Corp.,* 284 F. App'x 640, 643 (11th Cir. 2008) (quoting *State v. Wyndham Int'l, Inc.,* 869 So.2d 592, 598 (Fla.App.2004)); *see also, Cold Stone Creamery, Inc. v. Lenora Foods I, LLC,* 332 F. App'x 565, 567 (11th Cir. 2009) (recognizing that for a FDUTPA claim, "the plaintiff must prove that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'") (quoting *Office of the Att'y Gen. v. Com. Com. Leasing, LLC,* 946 So.2d 1253, 1258 (Fla. 1st DCA 2007)).  Here, no reasonable juror could conclude that Defendant's internal policies are likely to deceive a reasonable consumer given that

consumers are not privy to those policies.  Stated differently, a reasonable consumer cannot be deceived into believing that Defendant is complying with its AML, KYC, and KYB policies when the consumer necessarily has no awareness of those policies. As such, Plaintiffs cannot satisfy the causation element of their FDUTPA claim because consumers have no access to such policies.

Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiffs' FDUTPA claim, and Defendant's Motion is **GRANTED** as to Count II.

### C.   <u>Defendant is Entitled to Summary Judgment on Count IV.</u>

Defendant argues that it is entitled to summary judgment on Plaintiffs' negligence claim because (i) Plaintiffs' negligence claim is preempted by the Copyright Act, and (ii) Plaintiffs cannot establish the existence of a duty.  ECF No. [83] at 31–32.  As explained below, the Court concludes that while Plaintiff's negligence claim is not preempted, Plaintiffs have failed to establish the existence of a legal duty as required to prevail on their negligence claim.

#### 1. The Copyright Act Does Not Preempt Plaintiffs' Negligence Claim.

As explained above, the Eleventh Circuit has adopted a two-prong test to determine whether the Copyright Act preempts a state law cause of action, namely (i) "whether the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103 [of the Act]" and (ii) "whether the rights at issue are 'equivalent to' the exclusive rights of section 106 [of the Act]."  *Crow*, 720 F.2d at 1225–27.  Defendant contends that "Plaintiffs' negligence claim relies on the same set of allegations as its contributory infringement claim."  *Id.* at 31.  However, the

basis of Plaintiffs' negligence claim is that Defendant breached its alleged duty "not to knowingly allow its platform to be used for illegal activities" and "not to make material misrepresentations on its website that would lead Plaintiffs and other consumers to believe it is complying with KYC and KYB regulations."  ECF No. [40] ¶¶ 68–69.  As with their FDUTPA claim, the "rights at issue" in Plaintiffs' negligence claim do not "fall within the subject matter of copyright."  *Crow*, 720 F.2d at 1225–26.  Thus, the first element of Section 301 preemption is not met.

Once again, even if the first prong was met, the second prong is not.  A claim for negligence under Florida law has four elements: (1) duty, (2) a breach of that duty, (3) causation, and (4) damages.  *See Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012).  As discussed above, a claim for copyright infringement requires that a plaintiff show (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original, *Feist Publications*, 499 U.S. at 361, and a claim for contributory infringement has two elements: (i) direct infringement and (ii) intentional inducement or encouragement, *Guirguis*, 2022 WL 1664181, at \*9.  Plaintiffs' negligence claim requires proof of qualitatively different elements (i.e., duty, breach, causation, and damages) than those in a copyright claim.  *Compare Foley*, 249 F.3d at 1286 (finding that the breach of duty essential to a trade secret case is an extra element that qualitatively distinguishes those claims from copyright claims) *with Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1218 (S.D. Fla. 2021) (holding that state law claims for negligence and fraud were preempted by the Copyright Act where the copyright infringement claim relied

on allegations of false statements).[12]  Stated differently, Plaintiffs' negligence claim requires proof of elements beyond mere reproduction or distribution of copyrighted works and, therefore, is not preempted.

### 2. Plaintiffs Have Failed to Establish the Existence of a Legal Duty as Required to Prevail on Their Negligence Claim.

Defendant also argues that Plaintiffs' negligence claim fails as a matter of law because there is no duty to prevent the conduct of third persons or to prevent a third party's economic loss. ECF No. [83] at 31–32.  More specifically, Defendant argues that it has no duty to police third party infringement, and that such infringement is an intervening cause of the damages Plaintiffs allege.  *Id.*  In their Response, Plaintiffs argue that the relevant duty is Defendant's "duty to not misrepresent to its users and prospective users that it was disallowing and stopping illicit activity." ECF No. [88] at 28–29.  Plaintiffs also argue that Defendant's policies are "toothless and cannot…be relied upon." *Id.*

Under Florida law, a claim for negligence requires proof of "a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Group, Inc.*, 680 F.3d at 1339. The existence of a duty is a question of law, rather than a question of fact for the jury. *Id.*  Florida law establishes that a duty may arise from four general sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182,

---

[12] Here, Plaintiffs' contributory infringement claim does not rely upon Defendant's alleged misrepresentations.  *See* ECF No. [40] at 18.

1185 (Fla. 2003); *see also Limones v. Sch. Dist. of Lee Cnty.*, 161 So.3d 384, 389 (Fla. 2015).  Plaintiffs' negligence claim is not rooted in any of these four sources.

Plaintiffs do not allege, or even argue, that Defendant's alleged duty arises from any legislative enactments or administration regulations, or judicial interpretations thereof.  *See generally*, ECF Nos. [40], [88].  Similarly, Plaintiffs do not identify any caselaw that creates the alleged duty that Defendant purportedly breached.  *Id.*  Indeed, Plaintiffs' Response is devoid of a single legal citation that establishes the existence of the duties alleged in Count IV.[13]  ECF No. [88] at 29.  To be sure, Plaintiffs fail to meaningfully address Defendant's argument.  *Id.*

At best, Plaintiffs' Response argues that their negligence claim falls within the fourth source, namely "a duty arising from the general facts of the case."  However, this argument also fails.  "[W]hen the duty is rooted in the fourth prong, factual inquiry into the existence of a duty is limited to whether the defendant's conduct foreseeably created a broader zone of risk that poses a general threat of harm to others." *Limones*, 161 So.3d at 389 (internal citations omitted).  However, "a legal duty is not established by evidence of foreseeability alone." *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).  "There must also be some evidence that the risk was created by the alleged negligence of the defendant."  *Id.* at 397.

---

[13] Plaintiffs cite *Bass v. Facebook, Inc.*, a non-binding decision issued by the Northern District of California under the motion to dismiss standard where the court found that allegations the defendant owed a duty to protect its own users' personal data from foreseeable harm of disclosure stated a claim for relief.  394 F. Supp. 1024, 1039 (N.D. Cal. June 21, 2019). The facts and procedural posture of this action are wholly inapposite to *Bass*.

In the Amended Complaint, Plaintiffs allege that Defendant "has a duty not to knowingly allow its platform to be used for illegal activities," and "a duty not to make material misrepresentations on its website that would lead Plaintiffs and other consumers to believe it is complying with KYC and KYB regulations." ECF No. [40] ¶¶ 68–69. Plaintiffs make no argument as to how Defendant's cryptocurrency conversion platform creates a risk of harm to consumers who seek to subscribe to Israel TV, particularly given the absence of evidence that Defendant induces or encourages them to do so. Further, Plaintiffs have not identified any evidence that shows how Defendant's internal KYC and KYB policies[14] foreseeably created any risk to consumers, when Defendant's KYC and KYB policies are not available to the public. Given that these are internal documents, Defendant's purported misrepresentations on its website could not have "foreseeably created a broader zone of risk" that the public would be harmed by believing that Defendant was complying with its KYC and KYB policies. As such, Plaintiffs have failed to establish the existence of a legal duty as required to prevail on their negligence claim.

Accordingly, Defendant is entitled to judgment as matter of law on Plaintiffs' negligence claim, and its Motion is therefore **GRANTED** as to Count IV.

## V.     CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF No. [82], is **GRANTED**. The Court will separately enter final judgment in favor

---

[14] In their Amended Complaint, Plaintiffs' negligence claim references only Defendant's KYC and KYB policies. *See* ECF No. [40] ¶¶ 67–72.

28

of Defendant MoonPay USA LLC.   The Clerk is directed to **CLOSE** this case, and

any pending motions are **DENIED AS MOOT.**

**DONE AND ORDERED** in Miami, Florida, this 13th day of July, 2026.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**